IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PHILLIP THOMPSON,

                            Petitioner,                            OPINION and ORDER

     v.

WARDEN E. EMMERICH,                          25-cv-689-jdp

                          Respondent.

Petitioner Phillip Thompson, proceeding without counsel, seeks relief under 28 U.S.C. § 2241, contending that the Bureau of Prisons is calculating his release date incorrectly. Challenges to the calculations of a prisoner's federal sentence are properly brought under § 2241. *Taylor v. Lariva*, 638 F. App'x 539, 541 (7th Cir. 2016); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997). The question is whether Thompson has shown that the bureau's calculation is incorrect.

When Thompson filed this petition, the difference between Thompson's proposed release date and the bureau's proposed release date was relatively small. The bureau had calculated his release date as January 17, 2027; Thompson believes it should be five months earlier. But January 17, 2027, is *not* the date that the bureau is defending in its response. In fact, the bureau does not even acknowledge that it had previously calculated that release date. Instead, the bureau recalculated the release date after Thompson filed his petition. Now, instead of a difference of five months, the difference is almost six *years*: the bureau's new projected release date for Thompson is July 5, 2032.

Thompson has not shown that he is entitled to be released in September 2026. But he has shown that the bureau erred by adding more than five years to his sentence. That leaves us

with the original January 17, 2027 projected release date. Neither side has shown that the original release date is wrong, so I will grant the petition in part, directing the bureau to restore the January 17, 2027 projected release date.

## BACKGROUND

The parties do not dispute the relevant facts.

On June 2, 2017, Thompson was arrested for violating his supervised release in the Eastern District of Virginia, and he was placed in federal custody. Thompson was accused of reentering the country illegally, conspiring to distribute marijuana, and conspiring to commit money laundering. *United States v. Thompson*, No. 03-cr-420 (E.D. Va), Dkt. 330. Later the same month, federal prosecutors in the Southern District of Florida charged Thompson with illegal reentry. *United States v. Thompson*, No. 17-60152-CR. In July 2017, federal prosecutors in the Eastern District of Virginia charged Thompson with conspiring to distribute marijuana and conspiring to commit money laundering. *United States v. Thompson*, No. 17-cr-94. Thompson's supervised release was revoked in 03-cr-420; the other two cases resulted in convictions for the accused crimes.

On January 29, 2018, the court in the Eastern District of Virginia imposed two sentences on Thompson, one for the conspiracy crimes and one for the violation of his supervised release. On the conspiracy crimes, the court imposed a 105-month term of imprisonment. Dkt. 14-7. On the revocation, the court imposed a 30-month term of imprisonment, to run consecutive to the 105-month sentence. Dkt. 14-6.

On July 17, 2018, the court in the Southern District of Florida sentenced Thompson to a 105-month term of imprisonment on the illegal reentry conviction. Dkt. 14-9, at 3. The

2

judgment states that the sentence is "to run concurrent but not coterminous" with the sentence on the conspiracy crimes in the Eastern District of Virginia. *Id.* The following month, the judgment of conviction was corrected to reduce the term of imprisonment to 100 months, still to run concurrent but not coterminous with the conviction for the conspiracy crimes. Dkt. 14-10. The judgment of conviction in the Florida case does not refer to the 30-month sentence for the supervised release violation.

In October 2024, the court in the Eastern District of Virginia granted Thompson's motion under 18 U.S.C. § 3582(c), reducing the 105-month sentence to an 81-month sentence. Dkt. 14-8.

So as of October 2024, Thompson was serving the following sentences:

(1) an 81-month sentence on the conspiracy convictions;

(2) a 30-month sentence on the supervised release violation, to run consecutive to the 81-month sentence;

(3) a 100-month sentence on the illegal reentry conviction, to run concurrent with the sentence on the conspiracy conviction.

ANALYSIS

This habeas petition comes before the court in an unusual procedural posture. As already noted, the question framed in Thompson's petition was whether he should be released in January 2027 or September 2026. But that is no longer the only question because the bureau now contends that Thompson's release date is in July 2032. The bureau does not contend that its new position requires Thompson to file a new administrative grievance, so the bureau has waived any arguments about a potential failure to exhaust administrative remedies. *See Gonzalez*

*v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Rather, both parties proceed as if Thompson's petition has been constructively amended to include a challenge to the July 2032 projected release date. So there are two questions before the court: (1) is Thompson correct that the bureau should have subtracted five months from his original January 2027 release date? and (2) is the bureau correct that it needed to add more than five years to the January 2027 projected release date?

## A. Whether Thompson is correct that the bureau should have subtracted five months from his projected release date

Thompson's position can be summarized as follows. Before October 2024, Thompson's three sentences added up to 135 months: he was serving an 105-month sentence and a 100-month sentence to be served concurrently and a 30-month sentence to be served consecutively (105 months + 30 months = 135 months). So when the 105-month sentence was reduced to 81 months, that reduced the overall sentence to 130 months because the 81-month sentence was effectively subsumed into the 100-month sentence.

The problem with Thompson's argument is that it rests on an assumption that he began serving the 81-month sentence and the 100-month sentence at the same time. But that is incorrect. A defendant cannot begin serving his sentence before it is imposed. *See* 18 U.S.C.A. § 3585(a); *Diaz v. Holinka*, No. 10-CV-218-SLC, 2010 WL 2403762, at *2 (W.D. Wis. June 10, 2010). A defendant may be entitled to sentence credit for time he spent in custody before being sentenced, *see* 18 U.S.C. § 3585(b), but that does not affect the date his sentence commences. Thompson did receive 241 days sentence credit for the time he spent in custody before his sentence, and he does not challenge the bureau's calculation of that credit.

4

Thompson was sentenced on the conspiracy crimes in January 2018, and he was sentenced for the illegal reentry in July 2018. The two sentences were concurrent, but they were not coterminous, which means that they did not have to be completed at the same time. *See Brown v. Parker*, 771 F.3d 1270, 1272 (10th Cir. 2014). In other words, the two sentences overlapped, but they did not begin or end at the same time. So when Thompson's 105-month sentence was reduced to 81 months, that did not translate to a five-month reduction in his term of imprisonment because Thompson did not begin serving his 100-month sentence for illegal reentry until more than five months after what was initially a 105-month sentence for the conspiracy crimes.

Thompson says that the bureau forfeited any arguments about subtracting five months from his release date because they did not address the issue in their opposition brief. But that is not accurate. The bureau addressed the key issue, which is when Thompson began serving his sentences. Thompson does not challenge the evidence the bureau submitted about when he began serving his sentences, and he cites no authority for the view that he began serving any of his sentences before they were imposed. So he has not shown that the bureau's January 2027 projected release date was incorrect. I will deny Thompson's claim that he is entitled to release in September 2026.

**B. Whether it was correct for the bureau to add more than five years to Thompson's projected release date**

The next question is whether the bureau was correct when it recalculated Thompson's release from January 2027 to July 2032. The parties agree that, under the instructions of the sentencing courts, the 81-month sentence and the 100-month sentence are to run concurrently, and the 30-month sentence for the supervised-release violation is to run consecutively to the

5

81-month sentence. The Florida district court did not specify whether the 100-month sentence should run concurrent or consecutive to the 30-month sentence. When, as in this case, two sentences are imposed at different times, and the court is silent about whether the sentence is concurrent or consecutive, the two sentences are run consecutively. 18 U.S.C. § 3584(a).

The bureau does not explain how it calculated Thompson's January 2027 projected release date, but it appears that it was based on a view that Thompson would first serve his 81-month and 100-month sentences concurrently, followed by the 30-month sentence. The bureau's current position is that it is "not possible" to comply with the sentencing courts' instructions to run the 81-month and 100-month sentence concurrently because Thompson must finish his 81-month sentence *and* his 30-month sentence before he begins serving his 100-month sentence. Dkt. 13, at 6 & n.3 (citing Dkt. 14-12). The bureau sets forth its view in the following paragraph:

> Although the SDFL court ordered Thompson's illegal reentry sentence to run concurrently with his drug conspiracy sentence, it ordered the supervised release violation to be consecutive to its sentence. Moore Decl. ¶¶ 7-8, Atts. 12-13.[1] For this reason, and because BOP was required to treat his drug conspiracy and supervised release sentences as a single sentence, Thompson's 100-month illegal reentry sentence cannot begin running until he finishes his combined 111 months from the EDVA cases. Without this structure, the BOP cannot run the two sentences consecutively as ordered by the SDFL court, because Thompson's

---

[1] To be precise, the Florida district court did not "order" the sentence on the supervised release violation to run consecutive to the illegal reentry sentence. Rather, as already noted, the Florida district court was silent on that issue. The bureau cites an email from the Florida district court's courtroom deputy that "the 30 months is to start running after our sentence." Dkt. 14-13, at 3. But the bureau cites no authority for the view that an email from a courtroom deputy has any legal consequence. Regardless, the 30-month sentence runs consecutive to the 100-month sentence under § 3584(a), so there is no practical difference between silence and an express order in this context.

> supervised release sentence is being served first (as aggregated with the drug conspiracy sentence).

*Id.* at 6. So the bureau's projected July 2032 release date is based on its view that each of Thompson's sentences will have to be served consecutively (81 months + 30 months + 100 months, for a total of 211 months).

The bureau does not acknowledge that its current position is inconsistent with its previous calculation of Thompson's sentence. And the only authority the bureau cites to support its new calculation is 18 U.S.C. § 3584(c) and the bureau's Program Statement 5880.28, which implements that statute. Section 3584(c) states that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." The bureau does not cite any language from the program statement that provides more guidance than the statute.

Under its current view, the bureau is violating the judgment of the Florida district court by running the 100-month sentence consecutive to the 81-month sentence. Nothing in § 3584(c) required the bureau to treat all three sentences as consecutive. The bureau says that its proposed structure is the only way to ensure that the 100-month sentence is consecutive to the 30-month sentence, as required by § 3584(a). But the bureau does not support that view. The bureau's position seems to be based on a view that that the two terms of imprisonment imposed by the Virginia district court should be viewed as one aggregated sentence, and the term of imprisonment imposed by the Florida district court should be viewed separately. But, as already discussed, § 3584(c) treats all three sentences as one for administrative purposes, so that type of grouping is contrary to the statute.

There are two ways that the bureau could comply with both the Florida district court's judgment for the 100-month sentence to run concurrently with the 81-month sentence and

7

the Virginia district court's judgment and the rule in § 3584(a) for the 30-month sentence to run consecutively to the others. Thompson could first serve the 81-month and 100-month sentence concurrently, followed by the 30-month sentence. Alternatively, the bureau could calculate Thompson's release date based on a term of imprisonment that begins with the 30-month sentence and is followed by the two concurrent sentences. It does not matter in which order the sentences are served. *See United States v. Gonzales*, 520 U.S. 1, 8 (1997). The important point is that the bureau points to no rule that would require Thompson to serve both the 81-month sentence and the 30-month sentence before he can begin to serve the 100-month sentence.

### C. Conclusion

I conclude that Thompson has not shown that he is entitled to a September 2026 release date as a result of the reduction of his 105-month sentence to 81 months. But he has shown that the bureau was wrong to recalculate his release date based on a view that he must serve all of his sentences consecutively. This leaves us back where we started, with a projected release date of January 17, 2027.

Based on the court's calculations, it appears that a January 2027 projected release date is approximately correct for a 130-month sentence starting on July 17, 2018, with 241 days of credit for pretrial detention and credit for good time. The court cannot make a precise calculation because the parties have not provided complete information about Thompson's sentence credits. But Thompson does not challenge the bureau's calculation of his sentence credits, so the court will assume that the originally calculated release date is correct under the court's ruling here.

The bottom line is that neither party has identified a valid basis for challenging that initial calculation, so I will grant Thompson's petition for a writ of habeas corpus in part and direct the bureau to reinstate Thompson's January 17, 2027 projected release date.

ORDER

IT IS ORDERED that:

1.  Phillip Thompson's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED in part and DENIED in part. The petition is denied on Thompson's claim that his projected release date should be in September 2026. The petition is granted on Thompson's alternative claim that his projected release date should be January 17, 2027.

2.  Respondent E. Emmerich is directed to recalculate Thompson's projected release date to January 17, 2027.

3.  The clerk of court is directed to enter judgment accordingly and close this case.

Entered June 8, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge